**Donald Whitfield BUCKLEY, Sr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–87–088–CR.**

Court of Appeals of Texas, Texarkana.

Aug. 23, 1988.

James L. Clark, Naples, for appellant.

David Nichols, Dist. Atty., Daingerfield, for appellee.

GRANT, Justice.

Donald Whitfield Buckley, Sr. was convicted by a jury of the offense of aggravated sexual assault. The jury assessed punishment at ninety-nine years confinement in the Texas Department of Corrections. Buckley appeals this conviction.

In his sole point of error, Buckley maintains that the trial court erred in admitting evidence pursuant to Article 38.072 of the Texas Code of Criminal Procedure because this statute violates his constitutional right to confront his accuser as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article 1, § 10 of the Texas Constitution.

During the 1986–87 school year, the alleged victim lived in Daingerfield with Buckley, who is her father, and her two brothers, ages seven and nine. The children's mother had not lived with them since the alleged victim was three years old. The alleged victim was then eight years old and had completed the second grade. Shortly after school ended, about May 29, 1987, the alleged victim's oldest sister, Dianne Lillie, visited her younger sister and brothers in Daingerfield, and the alleged victim went to live with her. After living with her sister about one week, the alleged victim related facts which gave rise to this prosecution, and it is this statement by the alleged victim to Lillie which gives rise to the questions on appeal.

The statute in question, Article 38.072 provides as follows:

Sec. 1. This article applies to a proceeding in the prosecution of an offense under any of the following provisions of the Penal Code, if committed against a child 12 years of age or younger:

(1) Chapter 21 (Sexual Offenses) or 22 (Assaultive Offenses);

(2) Section 25.02 (Incest);

(3) Section 25.06 (Solicitation of a Child, added by Chapter 413, Acts of the 65th Legislature, Regular Session, 1977); or

(4) Section 43.25 (Sexual Performance by a child).

Sec. 2. (a) This article applies only to statements that describe the alleged offense that:

(1) were made by the child against whom the offense was allegedly committed; and

(2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense.

(b) A statement that meets the requirements of Subsection (a) of this article is not inadmissible because of the hearsay rule if:

(1) on or before the 14th day before the date the proceeding begins, the party intending to offer the statement:

(A) notifies the adverse party of its intention to do so;

(B) provides the adverse party with the name of the witness through whom it intends to offer the statement; and

(C) provides the adverse party with a written summary of the statement;

(2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and

(3) the child testifies or is available to testify at the proceeding in court or in any other manner provided by law.

Tex.Code Crim.Proc.Ann. art. 38.072 (Vernon Supp.1988).

Before any evidence was presented to the jury, the trial court extensively questioned the child alleged to have been the victim. The child was then placed under oath and was questioned outside the pres-

ence of the jury by the district attorney and the attorney for the defendant. Dianne Lillie was then called as a witness outside the presence of the jury and was questioned by the attorneys for both sides.

The State opened its presentation of evidence to the jury by calling Lillie as its first witness. Her testimony before the jury included the following:

A She told me that my dad was spreading her legs open, putting his tee tee in her tee tee.

Q Could you speak up a little bit. She said what?

A She said that my father was spreading her legs open and putting his tee tee in her tee tee.

Q Have you known [the victim] ever since she was born?

A Yes, sir.

Q Have you lived with her or visited periodically on a more or less regular basis?

A Yes, sir.

Q Are you familiar with the kind of terms that she may use to describe the private parts of the body?

A Yes, sir.

Q Do you know what she would have meant in Buckley family parlance by tee tee?

A Yes, sir.

. . . .

Q Would you answer the question please, Dianne. What did tee tee mean in Buckley family parlance?

A Penis and vagina.

Q And she stated that your father, the Defendant in this case, he put his tee tee in her tee tee?

A Yes, sir.

. . . .

Q Did she state whether she'd been hurt in this incident?

A Yes, sir.

. . . .

Q Your answer, ma'am?

A Yes, sir.

Q She stated that she had been hurt?

A Yes, sir.

. . . .

Q Dianne, you've been talking about something that [the victim] told you in your visit to the home right at the end of the school year.

A Yes, sir.

Q In that conversation with [the victim] did she mention to you whether your dad had threatened her.

. . . .

A Yes, sir.

Q What exactly did she tell you.

. . . .

A She said that he told her not to tell anybody about it.

Q Did she say whether she understood anything was going to happen if she did.

. . . .

A She said that it scarred (sic) her.

Q Did you understand whether she meant that she felt anything was going to happen to her if she told?

. . . .

Q What exactly did [the victim] tell you regarding any threats that may have been made?

. . . .

A She told me that she was scared, because she thought that he would do what he was doing and hurt her worse.

Q When did she make this statement to you?

A Almost a week after she was staying with me.

Q Did she start staying with you right after school was out?

A Yes, sir.

Q Do you remember about the date that she would have made the statement to you?

A About the 5th of June.

. . . .

Q Did [the victim] tell you when it was that this incident occurred?

A Yes, sir.

Q When did she say it occurred.

. . . .

A The last day of school.

Q Did you understand that to be about a week before she told you?

A Yes, sir.

Q Did you understand where this is supposed to have occurred?

A Yes, sir.

. . . .

Q Okay. Did [the victim] tell you whether this incident happened in a public place, a car, somebody's home or any specific place?

A Yes, sir.

Q What did she tell you?

A It was in her home.

Q That being the Buckley home in Morris County?

A Yes, sir.

After Lillie's testimony, the State called Dr. Colton Bradshaw. He testified that for the purpose of medical diagnosis, the child, who was the alleged victim, told him that "he [her father] would sometimes pull her legs apartment (sic) and lie very close to her, sometimes—and she hesitated and then I asked sometimes does he go inside your body and her answer was yes." The doctor further testified that his physical examination of the alleged victim found indications which were consistent with the child's statement to him. The State then called the alleged child victim, and she testified that her father, Buckley, sexually assaulted her.

Buckley contends that Article 38.072 of the Texas Code of Criminal Procedure is unconstitutional for the same reason that the Court of Criminal Appeals declared Article 38.071 of the Code of Criminal Procedure unconstitutional in *Long v. State*, 742 S.W.2d 302 (Tex.Crim.App.1987). How-ever, we find that the basis upon which the Court of Criminal Appeals declared Article 38.071 unconstitutional in the *Long* case is not applicable to Article 38.072 in the present case.

Although this type of statement is not a well-rooted exception to the hearsay rule to show the truth of the matter stated, at least twenty-seven states had enacted some form of the child-victim hearsay exception as of May, 1987.[1] J. Myers & N. Perry, *Child Witness Law and Practice* § 5.38 (Supp.1988), *citing* R. Eatman & J. Bulkley, *Protecting Child Victim/Witnesses: Sample Laws and Material* 51 (1986), as reported by the American Bar Association's National Center for Child Advocacy and Protection. In the case of *In re Marriage of P.K.A.*, 725 S.W.2d 78 (Mo.Ct.App.1987), the court, upon finding that a child's statement did not fit within any of the hearsay exceptions, created a hearsay exception for the statements of children. The Texas Legislature created such an exception by the passage of Article 38.072 of the Code of Criminal Procedure.

The Bill Analysis of House Bill 579 (69th Legislature), which became Article 38.072 of the Code of Criminal Procedure, sets forth the following under the heading "Background Information:"

> Under current rules of evidence, out-of-court statements offered at trial as proof of the matter are inadmissible as hearsay. Various exceptions to the hearsay rule exist when the circumstances make the out-of-court statements reli-

---

1. Such testimony is admissible under Tex.Code Crim.Proc.Ann. art. 38.07 (Vernon Supp.1988) and is required under that section to corroborate the testimony of the victim in certain circumstances. However, outcry testimony under Article 38.07 is admissible only to show that the complaint was made and the nature of the complaint, not to prove that the sexual attack occurred. *Grogan v. State*, 713 S.W.2d 705 (Tex. App.–Dallas 1986, no pet.); *Brown v. State*, 649 S.W.2d 160 (Tex.App.–Austin 1983, no pet.).

The court implies in *Long* that the videotaped statement is not a well-recognized exception to the hearsay rule by stating the following parenthetically: "[U]nderstandably, the State does not argue or even suggest that [a well-recognized exception to the hearsay rule] is a basis for approving the statute."

In *State v. Slider*, 38 Wash.App. 689, 688 P.2d 538 (1984), the Washington Court of Appeals determined that because the child sexual abuse exception is not a "firmly rooted" hearsay exception, particularized guarantees of trustworthiness are required for admissibility. The court concluded that a higher standard of reliability is required as a substitute, because this exception does not fall with the traditional hearsay exceptions.

The only way that this evidence could qualify under the exceptions in Tex.R.Evid. 803 is if it could qualify as a present sense impression, an excited utterance, a statement made for the purposes of medical diagnosis and treatment, or as a statement made against interest. It cannot qualify under Rule 803 merely on the basis of being an outcry.

able. Currently, there are few exceptions for the statements of a child who is the victim of a crime, other than the general "excited utterance" exception developed in Texas case law.

There are significant distinctions between the statutory provisions in Article 38.071, which the Court of Criminal Appeals found to be unconstitutional in *Long v. State, supra,* and Article 38.072, and there are also significant distinctions between the facts in the present case and the facts in *Long v. State.* In *Long,* the State in its case-in-chief did not call the child who was the alleged victim, but instead showed the jury a videotaped interview with the child. In the interview, the child was asked questions by a state employee trained in handling child abuse cases, but the defendant was denied the opportunity for a contemporaneous cross-examination of the child. The State later called the child in person on rebuttal. This differs significantly from the situation in the present case. First, the hearsay presentation does not have the impact of presenting the child witness through a visual electronic medium. Second, the State did not have a representative asking the child questions when the child made these initial statements, but the child spontaneously told her older sister of the occurrence. Third, the State called the child in the case-in-chief to verify the making of the statements and to allow cross-examination.

What the Court of Criminal Appeals condemned in *Long* was a statute (Article 38.-071) that was constitutionally unacceptable, because it was not "individualized to a particular prosecution and on its face and in its operation [it] assumes that confrontation in a particular class of cases will produce unnecessary trauma." The court in *Long* cited *Globe Newspaper Company v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), and *Allen v. State,* 700 S.W.2d 924 (Tex.Crim.App.1985), with approval for the principle that each

case has to be judged on "its own merits, otherwise the statute would be unconstitutional." The failure to judge each case on its own merits was what the court found to be "the constitutional deficiency that plagues Article 38.71."

The necessity of approaching each case to determine the applicability of the statute is preserved in Article 38.072, § 2(b)(2). The trial court found, in a hearing conducted outside the presence of the jury, that the statement was reliable. Such a finding is specifically required by the statute before this testimony becomes admissible.

This statutory provision gives the trial court the opportunity to determine if the testimony reaches the level of reliability required to be an exception to the hearsay rule. Indicia of reliability that the trial court may look to include (1) whether the victim testifies at the trial and admits making the out-of-court statement; (2) whether the child is of a level of maturity to understand the need to tell the truth and to have the ability to observe, recollect, and narrate; (3) whether the child's out-of-court statement is corroborated by other evidence; (4) whether the child's out-of-court statement was spontaneously [2] made in the child's own terminology or whether there is evidence of prior prompting or manipulation by adults; (5) whether the child's out-of-court statement is clear and unambiguous and rises to the needed level of certainty; (6) whether the statement is consistent; (7) whether the statement describes an event that a child of his or her age could not be expected to fabricate; (8) whether there is abnormal behavior by the child after the contact; (9) whether there is a motive for the child to fabricate the out-of-court statement; (10) whether the statement is against the interest of the child, e.g., the child expects punishment because of reporting the conduct; and (11) whether there was an opportunity under the evidence for the alleged act to have been

2. "A child victim's spontaneous out-of-court account of an act of sexual abuse may be highly credible because of its contents and surrounding circumstances; young children, having no sexual orientation, do not necessarily regard a

sexual encounter as shocking or unpleasant and frequently relate such incidents to parent or relative in matter-of-fact manner." *State v. D.R.,* 109 N.J. 348, 537 A.2d 667 (1988).

committed by the defendant. We find that at the time the evidence was offered the record is sufficient for the trial judge to have found most of the foregoing factors in support of reliability; and that the evidence in its entirety supports a finding of all of these factors.

The Court of Criminal Appeals in the *Long* case was critical of placing the defendant in the position of having to incur the wrath of the jury by calling the child to testify.[3] Article 38.072, § 2(b)(3) requires that the child be available to testify in order for the out-of-court statement to be admissible. In the present case, the child was present and was called by the State to testify during the State's case-in-chief.

We do not find Article 38.072 to be unconstitutional as applied to this case, and therefore, the judgment of the trial court is affirmed.

CORNELIUS, Chief Justice, concurring.

I agree with Justice Grant's opinion, but write to add my comments and additional reasons why I do not believe the statute in question violates either the constitutional right of confrontation or due process.

In *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), and other cases, the United States Supreme Court made it abundantly clear that it is the right to confront the witnesses *at trial*, *Id.* at 157, 90 S.Ct. at 1934, 26 L.Ed.2d at 496, that is protected by the Sixth Amendment, and as stated by the court:

> [T]he Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.

*Id.* at 158, 90 S.Ct. at 1935, 26 L.Ed.2d at 497. Confrontation at the time the prior statement is made is not required. Again, as the court said in *Green:*

> [T]he inability to cross-examine the witness at the time he made his prior statement cannot easily be shown to be of crucial significance as long as the defendant is assured of full and effective cross-examination *at the time of trial.*

*Id.* at 159, 90 S.Ct. at 1935, 26 L.Ed.2d at 497 (emphasis added). Tex.Code Crim. Proc.Ann. art. 38.072 (Vernon Supp.1988) provides several procedural and substantive safeguards, including the right to cross-examine the declarant at trial.

*Long v. State*, 742 S.W.2d 302 (Tex.Crim. App.1987), should not be applied to this case for two additional reasons. First, in important ways which will be mentioned later, Article 38.072 is different from the statute construed in *Long.* Second, the *Long* decision is, quite simply, wrong. It is hoped that when this general issue is again considered by the Court of Criminal Appeals it will use a more legally principled and enlightened analysis.

In *Long*, the court refused to follow *California v. Green*, supra, and attempted to justify its refusal by the fact that the out-of-court statement in that case was made at a preliminary hearing where cross-examination was available. The attempted justification is not valid. The opinion in *Green* makes it clear that, even when there is no opportunity for cross-examination at the time of the earlier statement, its admission does not violate the confrontation clause. The court said:

> [T]he out-of-court statement may have been made under circumstances subject to *none* of these protections [i.e., cross-examination, oath, and presence before the jury]. *But if the declarant is present and testifying at trial*, the out-of-court statement for all practical pur-

---

3. The Georgia Supreme Court upheld a similar statute and met the problem of cross-examination by requiring the trial court to adopt the following procedure:

> Before the state rests, the court shall, at the request of either party, cause the alleged victim to take the stand. The court shall then inform the jury that it is the court who has called the child as a witness, and that both parties have the opportunity to examine the child.

*Sosebee v. State*, 257 Ga. 298, 357 S.E.2d 562 (1987).

The Texas Rules of Evidence for both civil and criminal cases did not adopt Rule 614 of the Federal Rules of Evidence which allows the court to call witnesses.

poses regains most of the lost protections.

*California v. Green,* supra (emphasis added).

Neither *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), nor *Vasquez v. State,* 145 Tex.Crim. 376, 167 S.W.2d 1030 (1942), relied on by the court in *Long,* is apposite. In both those cases, *the declarant was not available at trial.*

I recognize that we in Texas are free to construe our state constitutional guarantee of confrontation more liberally than the Supreme Court construes the federal guarantee, but it is fallacious reasoning of the rankest sort *to use the same principles of constitutional construction* as in the federal cases, *and yet reach the opposite result.* Texas has always used and still uses the same principles of construction that are used in federal constitutional analysis in these questions. Our state guarantee of confrontation was designed to protect the same fundamental core values the federal guarantee sought to protect. Unlike some of the other constitutions, our State Constitution was formulated long after the Federal Constitution, and its fundamental principles and freedom guarantees were largely derived from the same sources as the federal ones. 1 G. Braden, *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 35, 42 (1977). It is not "liberal construction," but nonsense, to say that those principles mandate different results even though the federal and state guarantees are essentially the same.

Moreover, even when the declarant is not available to testify at trial, an out-of-court statement may be admitted without violating the confrontation clause if it fits within a firmly rooted and recognized exception to the hearsay rule. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *California v. Green,* supra.

Article 38.072 is an expansion of such an exception. As to evidence of the *fact of the complaint only,* it does no more than place a statutory imprimatur on a'traditional exception to the hearsay rule recognized in England and many of our states for nearly two centuries, and in Texas since at least 1884—the rape victim's outcry exception.[1] *Sentell v. State,* 34 Tex.Crim. 260, 30 S.W. 226 (1895); *Lawson v. State,* 17 Tex.App. 292 (1884); 4 *Wigmore on Evidence* § 1135 (1940), and cases there cited.

The fact that a rape or sexual abuse victim made a complaint of the crime is admissible under any of these three principles:

(1) As spontaneous declarations, sometimes said to be part of the "res gestae." The complaint must have been made reasonably soon after the crime so that it has the reliability of an excited utterance. 1 R. Ray, *Texas Law of Evidence Civil and Criminal* § 775 (Texas Practice 3d ed. 1980); 1A R. Ray, *Texas Law of Evidence Civil and Criminal* § 927 (Texas Practice 3d ed. 1980); 4 *Wigmore on Evidence* § 1139 (1940).

(2) As evidence of the fact of the complaint. As Professors Ray and Wigmore both observe, if the victim makes complaint of the crime, *at any time however remote,* this fact may be given in evidence by the State *as part of its case-in-chief,* regardless of the fact that the utterance is not spontaneous. 1A R. Ray, *Texas Law of Evidence Civil and Criminal* § 927 (Texas Practice 3d ed. 1980); 4 *Wigmore on Evidence* § 1135 (1940); 6 *Wigmore on Evidence* § 1761 (1940). Professors Ray and Wigmore fully cite and collate the authorities supporting this rule, and they need not be repeated here. Admission of this kind of evidence is justified as a legitimate forestalling of an adverse inference that would otherwise be drawn in this particular class of cases. If no mention were made of a complaint by the victim, the adverse inference might be drawn that, either the act did not occur, or that it was with the victim's consent. *Roberson v. State,* 49 S.W. 398 (Tex.Crim.App.1899). The length of time between the crime and the complaint

---

1. Technically the rule is not an exception to the hearsay rule. *The statement is not hearsay at all,* since it is admitted not for the truth of the matter asserted, but only for the fact of its utterance.

goes to the weight, and not to the admissibility of the evidence. *Conger v. State,* 63 Tex.Crim. 312, 140 S.W. 1112 (1911); *Roberson v. State,* supra. This exception goes all the way back to the "hue and cry" rule recognized by the common law. Indeed, a long standing Texas statute not only allows such proof, but requires it to sustain a conviction based on the uncorroborated testimony of a victim who was over the age of fourteen years at the time of the offense. Tex.Code Crim.Proc.Ann. art. 38.-07 (Vernon Supp.1988). Only the fact of the crime, and not its details, may be admitted under this exception. *Hanks v. State,* 142 Tex.Crim. 186, 151 S.W.2d 808 (1941); *Reeves v. State,* 111 Tex.Crim. 89, 10 S.W. 2d 90 (1928). The complaint is admissible only to show outcry, and not for the truth of the matter stated.

(3) Evidence of the complaint as a prior consistent statement to rehabilitate the victim after impeachment. 1A R. Ray, *Texas Law of Evidence Civil and Criminal* § 927 (Texas Practice 3d ed. 1980).

The justification for continuing to recognize these exceptions on the grounds of their reliability and the public policy reasons favoring them are capably discussed in J. Myers & N. Perry, *Child Witness Law and Practice* § 5.38 (1987).

Thus, the out-of-court statement in this case would have been admissible under the second principle noted, even if Article 38.-072 had never been enacted. Although it was admissible on the issue of complaint only, Buckley did not ask for an instruction limiting the evidence for that purpose, or object to its admission on any ground other than hearsay and the statute's alleged unconstitutionality.

Article 38.072 also does not violate either the due process guarantee of the United States Constitution or the due course of law provision of the Texas Constitution.

The statute does not deny due process. As noted in *Long,* due process requires a fair trial in a fair tribunal. *In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). Since all the safeguards of face-to-face confrontation at trial, effective cross-examination, and reliability of the statement are preserved in Article 38.072, it does not deny that essential fairness required by due process.

Finally, even if Article 38.072 is construed to be constitutionally infirm in its general application, it is not in its application to Buckley, the appellant in this case. The State called the victim as a witness and had her testify *as a part of its case-in-chief.* Buckley's counsel cross-examined her both as to the fact of the crime and the truth of her out-of-court statement, so he was not only afforded an opportunity for full and effective cross-examination, *he availed himself of that opportunity.* Unlike the defendant in *Long,* the State was not allowed to "introduce [its] case-in-chief twice."

Buckley may not defeat the operation of the statute on grounds that it might be unconstitutional as applied to someone else. He must show that it operated to deprive him of a constitutional right. No such deprivation has been shown in this case.

For the reasons stated, I concur in the judgment.

BLEIL, Justice, dissenting.

Our opinions highlight the delicate balancing of interests required in cases involving child victim hearsay exceptions. Were we writing on a clean slate, I could join in the majority's decision. But, we are not and I cannot.

As an intermediate appeals court we are bound by the decisions of the Court of Criminal Appeals as well as those of the United States Supreme Court and those courts' interpretations of the United States Constitution and the Texas Constitution. Recently the highest court in Texas undertook an independent, in-depth historical view of our constitutional decisions in this area of the law.

In *Long v. State,* 742 S.W.2d 302 (Tex. Crim.App.1987), the Court of Criminal Appeals determined that Tex.Code Crim.Proc. Ann. art. 38.071 § 2, *amended by* 1987 Tex.Gen.Laws, 2nd Called Sess. 180, 181 (Acts 1987, 70th Leg., 2nd Called Sess., ch. 55, § 1, eff. Oct. 20, 1987), was unconstitu-

tional. That statutory provision, originally enacted in 1983, provided for the admission in evidence of a videotaped oral statement of a child made before the trial of the case in which the child is alleged to be the victim. In 1985, before the *Long* decision, the Legislature enlarged the protection given to child sex crime victims by enacting Tex.Code Crim.Proc.Ann. art. 38.072 (Vernon Supp.1988), so that not only out-of-court videotaped statements were admissible in a criminal prosecution, but also out-of-court hearsay statements by a child to the first adult to whom the statement is made. In this appeal we are concerned with the latter enactment, sometimes referred to as the child victim hearsay exception. In *Long v. State, Id.,* the court agreed with Long's assertion that Tex.Code Crim.Proc.Ann. art. 38.071 denied him his right to be confronted by his accusers as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Texas Constitution.

Certain principles seem to be agreed upon by courts which have looked at the constitutional right of confrontation. At the heart of this right lies the opportunity for cross-examination of adverse witnesses at the trial itself. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed. 2d 40 (1987). And, generally, a defendant's right to confront the witnesses against him requires that the witnesses be present at trial and that the defendant be permitted an opportunity to cross-examine the witnesses. *See Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895).

The pivotal question before us today is the same question which was before the Court in *Long v. State, supra.* In an opinion concurring with the majority's decision, Judge Teague stated that question as follows:

> whether the State may use an ex parte out-of-court hearsay statement of an available and willing to testify witness during its case in chief to establish the defendant's guilt beyond a reasonable doubt, and the defendant was never given the opportunity to cross-examine the witness when the statement was taken.

In that concurring opinion, Judge Teague added that: "The essential rudiments of due process and due course of law forbid the admission of such a statement, and Judge Duncan's majority opinion correctly so holds. . . ." *Long v. State,* 742 S.W.2d at 329, (Teague, J., concurring). That was essentially the question before the Court in *Long,* and the answer given to that question was that use of the ex parte out-of-court hearsay statement was constitutionally prohibited.

Arguably, that holding goes beyond holdings by the United States Supreme Court which has consistently found hearsay evidence admissible when the declarant is available at trial for cross-examination, even when there was no cross-examination at the time the hearsay statement was given, reasoning that the in-trial opportunity for cross-examination about the out-of-court statement sufficiently tests the reliability of those statements. *See Kentucky v. Stincer,* 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971); *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

Nevertheless, the Court of Criminal Appeals was well aware of those decisions and reviewed them as well as certain decisions under the Texas Constitution prior to arriving at its decision in *Long.* The majority of the Court in *Long* found most significant the fact that the videotaped statement under Article 38.071 was "expressly taken without the defendant being present or represented." *Long v. State,* 742 S.W.2d at 319. Distinguishing that situation from the one in *Green,* the Court continued that, "Whereas, in *Green* the opportunity for contemporaneous cross-examination was extant and occurred." Thus the majority found the paramount evil was the admission of an out-of-court hearsay statement given at a time when there was no opportunity for cross-examination and confrontation.

The question which this Court now faces is perhaps one of the most difficult ones currently facing the courts in our country. The Legislature addressed the delicate competing interests which are involved when it amended Article 38.071 after the Dallas Court of Appeals ruled it unconstitutional in *Long v. State,* 694 S.W.2d 185 (Tex.App.–Dallas 1985), *aff'd,* 742 S.W.2d 302 (Tex.Crim.App.1987). Immediately following the amended version of Article 38.071, the Legislature set out its purpose:

Sections 2 and 6 of Acts 1987, 70th Leg., 2nd C.S., ch. 55 provide:

"Sec. 2. Purpose. The purpose of this statute is to establish procedures for the taking of testimony of child complainants in certain criminal prosecutions, while preserving the constitutional rights of defendants. The interests of the defendant include the right of confrontation, including cross-examination, under the Sixth and Fourteenth Amendments to the United States Constitution and under Article I, Section 10, of the Texas Constitution; and the right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 19, of the Texas Constitution.

"The state interest concerns the children who are victims of sexual offenses and who are subjected to the intimidating nature of confronting the defendant and the pressures related to the ordinary participation of the victim in a courtroom trial. In addition, because a child is more likely than an adult to have a difficult time recovering from the trauma related to an offense, it is in the state's interest that the child victim provide testimony as early and as infrequently as possible.

"Finally, it is in the interest of all parties that sufficient discretion be afforded courts hearing such cases, so that the competing interest can be balanced in an individualized manner. By providing the changes included in this Act the legislature believes that the courts will have a sufficiently flexible system that properly protects the rights of defendants while reducing the deleterious effects of the criminal justice system on certain child sex crime victims."

The interests which must be balanced, as set out above, apply equally to Article 38.072. Indeed, the complexity of this issue has caused it to draw wide attention. *See, e.g.,* the publication referred to in the court's opinion, J. Myers and N. Perry, *Child Witness Law and Practice* § 5.38 (1987). The authors note the difficulty of proof in child sexual abuse cases. "Child sexual abuse is often extremely difficult to prove. The crime is committed in secrecy, and there are seldom eyewitnesses other than the child." *Id.* at 372.

Myers and Perry go on to note that the legislatures in a growing number of states have responded by enacting special hearsay exceptions for child victims of sexual abuse. They observe that in 1982 Washington enacted a child victim hearsay exception that has served as a model for other states. In *State v. Ryan,* 103 Wash. 2d 165, 691 P.2d 197 (1984), the Washington Supreme Court upheld that statute—quite similar to our Article 38.072—against a constitutional attack. Generally, courts in other jurisdictions have approved the child victim hearsay exception statutes. *See, e.g., Cogburn v. State,* 292 Ark. 564, 732 S.W.2d 807 (1987); *Glendening v. State,* 503 So.2d 335 (Fla.Dist.Ct.App.1987); *State v. Myatt,* 237 Kan. 17, 697 P.2d 836 (1985); *State v. Bellotti,* 383 N.W.2d 308, 314–16 (Minn.App.1986); *State v. Marcum,* 750 P.2d 599 (Utah 1988); *State v. Nelson,* 725 P.2d 1353 (Utah 1986); *but see State v. Robinson,* 153 Ariz. 191, 198, 735 P.2d 801, 808 (1987); *State v. D.R.,* 109 N.J. 348, 537 A.2d 667 (1988).

Although the question of the constitutionality of Tex.Code Crim.Proc.Ann. art. 38.072 has not been ruled upon in this State, there can be little doubt that the decision of the *Court of Criminal Appeals* in *Long* controls that question. Furthermore, well before that court's *Long* decision, a case similar to the one now before us (before the existence of Article 38.072) was decided. In *Vasquez v. State,* 145 Tex.Crim. 376, 167 S.W.2d 1030 (1942), Vasquez was convicted of raping an eight-year-

old child. The child victim was not called as a witness. Rather, the child's grandmother testified to the child's condition, appearance, and as to what the child told her the defendant had done to her.

The court, after reviewing the failure of the child to testify not only as a violation of the defendant's right of confrontation but also as that failure to testify related to the sufficiency of the evidence, noted that:

> The little girl was nervous and exited (sic) and this was relied upon as a reason for the State not offering her as a witness, though she was an unusually smart child. We do not believe that it is sufficient under the facts stated to defeat the right of the accused to be confronted by the witness against him.

*Vasquez v. State*, 167 S.W.2d at 1032. Commenting on the *Vasquez* decision, the court in *Long* said, "What the court condemned in *Vasquez, supra*, is essentially what Art. 38.071, § 2, *supra*, was enacted to accomplish—except in more pervasive terms." *Long v. State*, 742 S.W.2d at 316.

The condemnation in *Vasquez*, as noted by the Court of Criminal Appeals, covered *essentially* what Article 38.071, § 2 was enacted to accomplish. That condemnation also covers what Article 38.072 was enacted to accomplish.

On the basis of *Vasquez* and *Long* I feel compelled to conclude that Article 38.072 is an unconstitutional deprivation of Buckley's right of confrontation under the Sixth and Fourteenth Amendments to the United States Constitution, and of his State-guaranteed right of confrontation under Article I, Section 10 of the Texas Constitution, because it allows the admission of out-of-court hearsay statements given at a time when the defendant has no right to be present or to cross-examine the witness.

Feeling compelled to follow *all* of the mandates of the Court of Criminal Appeals in *Long*—including its mandate that a defendant be allowed the right of confrontation and contemporary cross-examination of a witness before out-of-court hearsay statements are admitted in evidence—and being unwilling to fail to follow that decision because I personally may believe the decision to be "wrong," I dissent.

## ON MOTION FOR REHEARING

GRANT, Justice.

Since the writing of the initial opinion in this cause, the United States Supreme Court has again addressed the right of confrontation in *Coy v. Iowa*, — U.S. —, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). This case dealt with a statute that allowed two thirteen-year old girls, who were complaining witnesses in a sexual assault case, to testify at trial from behind a screen. The Court notes in the majority opinion that prior opinions involving the Confrontation Clause have involved either the *admissibility of out-of-court statements*[1] or restrictions on the scope of cross-examination. The Court in the *Coy* case clearly stated that the "Confrontation Clause guarantees the defendant a face-to-face meeting with *witnesses appearing before the trier of fact."* (Emphasis added.) What the Supreme Court condemned in *Coy*, both in the majority and the concurring opinions,[2] is a "generalized legislative finding of necessity," rather than "a case-specific finding of necessity."

The present case differs in two ways from the *Coy* case: First, it does not involve depriving the defendant of a face-to-face meeting with *witnesses appearing before the trier of fact.* Second, it does not involve an exception applying to an entire class, but rather allows a case-by-case

---

**1.** Here the Supreme Court cited *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). The *Ohio* case held that the testimony of an unavailable witness given at a preliminary hearing was admissible without violating the Sixth Amendment

Confrontation Clause. The *Dutton* case held that a hearsay statement which had been made by an alleged conspirator could be admitted into evidence without violating the defendant's right of confrontation.

**2.** Justices O'Connor and White joined in a concurring opinion.

court determination.[3] We do not find that the *Coy* decision alters in any way our original opinion in this case. We therefore overrule the Motion for Rehearing.

BLEIL, Justice, dissenting.

On June 29, 1988, the United States Supreme Court decided the case of *Coy v. Iowa,* ── U.S. ──, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). Because it directly bears on issues now before us, it merits discussion.

The Iowa statute before the Court in that case was different from the one before us now, nonetheless the Court was required— as are we—to determine whether the statute, designed to protect child witnesses, violated the defendant's rights guaranteed by the Confrontation Clause of the Sixth Amendment.

The Court noted that the Confrontation Clause provides two protections for a criminal defendant: the right to physically face those who testify against the defendant, and the right to conduct cross-examination, citing *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). In holding that the Iowa statute, which allowed a screen to be placed between a child witness and the defendant during trial, was an obvious violation of the right to confront witnesses at trial, the Court squarely addressed issues now before our Court.

Justice Scalia, writing for the majority, conceded that, "It is a truism that constitutional protections have costs." ── U.S. at ──, 108 S.Ct. at 2802. After declaring the Iowa statute unconstitutional, Justice Scalia said, "We leave for another day, however, the question whether any exceptions exist [to the right of confrontation]. Whatever they may be, they would surely be allowed only when necessary to further an important public policy."

Justice Scalia further said that when the exceptions from the normal implications were not firmly rooted in our jurisprudence there had to be individualized findings at the trial level that the particular witness needed special protection. He noted that the Iowa statutory exception, passed in 1985, "could hardly be viewed as firmly rooted."

In our case, despite what Chief Justice Cornelius indicates in his concurring opinion, the child victim hearsay statement is not arguably an exception firmly rooted in our jurisprudence. Our statute was enacted in 1985. The first of its kind in the country was enacted in 1982. An argument that the Article 38.072 child victim hearsay statement exception merely codifies existing law seems novel. *See, e.g.,* Skoler, *New Hearsay Exceptions for a Child's Statement of Sexual Abuse,* 18 J.Mar.L.Rev. 1, 8 (1984); Datesman, *State v. Smith: Facilitating the Admissibility of Hearsay Statements in Child Sexual Abuse Cases,* 64 N.C.L.Rev. 1352, 1362 (1986); and Peterson, *Sexual Abuse of Children—Washington's New Hearsay Exception,* 58 Wash.L.Rev. 813, 819–20 (1983).

Furthermore, in the present case there is no finding by the trial court that there was a compelling state interest which overrides Buckley's confrontation rights. Indeed, it is difficult to imagine any important public policy or state interest to be served in putting on hearsay statements to prove the case-in-chief when the witness is available and testifies. Even Justice O'Connor, who concurred in the majority's decision, would allow the "strictures of the Confrontation Clause" to give way to the "compelling state interest of protecting child witnesses," only when "a court makes a case-specific finding of necessity." ── U.S. at ──, 108 S.Ct. 2805 (O'Conner, J., concurring). The absence of any case—specific finding of necessity in the trial court precludes our concluding that any public policy or finding of state interests outweighs Buckley's Sixth Amendment rights.

For these additional reasons I conclude that the statute in question as it applies to

---

**3.** The *Coy* case talks in terms of individualized finding as to whether particular witnesses need special protection; whereas, the present case involves a statute which allows a case-by-case determination as to the reliability of the out-of-court statements.

Buckley in this case and on its face, is constitutionally infirm.