**AFFIRMED and Opinion Filed June 28, 2023**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-01032-CR**

**EVER RICARDO MARTINEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-84380-2019**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Kennedy
Opinion by Justice Carlyle

A jury found Ever Ricardo Martinez guilty of continuous sexual assault of a child, *see* TEX. PENAL CODE § 21.02(b), and assessed punishment at 45 years' confinement. Mr. Martinez appeals and we affirm in this memorandum opinion. *See* Tex. R. App. P. 47.4.

Shortly after meeting Maria Tapia, Mr. Martinez moved in with her and her two children, ten-year-old P.M. and nine-year-old A.M. Two years later, Mr. Martinez and Ms. Tapia had a child together, Y.M. Some three years later, on June 24, 2018, Mr. Martinez allegedly assaulted Ms. Tapia during an argument. Ms. Tapia

reported the incident to the police on June 29, 2018, and, later that week, she and her children moved in with her friend, Moriama Gomez.

After Ms. Tapia reported the assault, police initiated forensic interviews of P.M. and A.M., which took place on July 6, 2018. A few days later, P.M. told Ms. Gomez that Mr. Martinez "touched her vagina under her clothing" and that he took off her sister's diaper and "kiss[ed] her private all over." Nothing in the record indicates P.M. revealed to Ms. Gomez any additional details about these sexual abuse allegations. This revelation led to a second forensic interview, which Eli Molina conducted on July 13, 2018. According to Mr. Molina, P.M. described in detail two separate instances of sexual abuse, one taking place in the fall and another taking place in the winter. Authorities arrested Mr. Martinez the next day.

The State called Mr. Molina as a witness, and the court held a hearing outside the presence of the jury to determine whether he could testify to P.M.'s statements as an outcry witness. *See* TEX. CODE CRIM. PROC. art. 38.072. According to Mr. Molina, P.M. told him that one day during the fall, Mr. Martinez asked her to look for his phone. She looked under the bed in his bedroom, then sat on the bed. Mr. Martinez came in, pulled off her bottoms and underwear, and touched her on the inside of the folds of her female sexual organ. P.M. also told Mr. Molina that one day during the winter, she came to Mr. Martinez's bedroom while he was asleep. After she turned on the television and sat on the bed, Mr. Martinez woke up and

–2–

went to the restroom. When Mr. Martinez returned, he got on top of her, removed their bottoms and underwear, and put his "nuts" on her female sexual organ.

Mr. Martinez objected to Mr. Molina testifying, arguing that the State failed to prove Ms. Gomez was not the proper outcry witness, based on the State's notice stating that both Ms. Gomez and Mr. Molina were outcry witnesses. According to the notice, P.M. told Ms. Gomez about Mr. Martinez's oral contact with Y.M.'s genital area and Mr. Martinez's contact with P.M.'s genital area "under her clothing." Neither party called Ms. Gomez to testify. The court overruled Mr. Martinez's objection, concluding that the State laid the proper foundation to establish Mr. Molina as the outcry witness regarding the two specific instances of sexual abuse. The court also found P.M.'s statements were reliable. The court thus allowed Mr. Molina to testify to those statements as an outcry witness. *See* TEX. CODE OF CRIM. PROC. art. 38.072, § 2.

The court also held a hearing outside the presence of the jury to determine whether P.M. could testify to the extraneous offense Mr. Martinez committed against Y.M. She testified that she saw Mr. Martinez take off Y.M.'s diaper and kiss Y.M.'s vaginal area. P.M. testified this abuse took place in the same location her sexual abuse took place, in Ms. Tapia's and Mr. Martinez's shared bedroom. Mr. Martinez objected to the testimony, asserting the evidence was too prejudicial and could not convince a jury that the extraneous offense occurred beyond a reasonable doubt. The court overruled the objection.

On appeal, Mr. Martinez first contends the trial court abused its discretion by allowing Mr. Molina to testify as an outcry witness because the State failed to prove he was the first person over eighteen to whom P.M. reported the abuse. We review a trial court's outcry-witness determination for abuse of discretion. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd). For the outcry statement to be admissible, the witness must be the first person over the age of eighteen to whom the child made a statement about the offense. TEX. CODE CRIM. PROC. art. 38.072, § 2(a)(3); *see Bays v. State*, 396 S.W.3d 580, 585 (Tex. Crim. App. 2013). But the child's statement to the witness must describe the offense "in some discernable manner" and be more than "a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 91.

While the State included Ms. Gomez in its 38.072 notice, the document states P.M. told Ms. Gomez about two sexual abuse allegations: (1) Mr. Martinez touching her genital area under her clothing; and (2) Mr. Martinez's oral contact with Y.M.'s genital area. The document lists no additional details regarding those sexual-abuse allegations, and Mr. Martinez did not call Ms. Gomez at the hearing or at trial to testify to P.M.'s disclosure.

The State bears the initial burden of producing evidence showing that an individual is an outcry witness; once the State meets that burden, the burden shifts to the defense to rebut the evidence. *See Garcia*, 792 S.W.2d at 91–92; *Eldred v.*

–4–

*State*, 431 S.W.3d 177, 184 (Tex. App.—Texarkana 2014, pet. ref'd); *see also In re Z.L.B.*, 102 S.W.3d 120, 123 (Tex. 2003). Because Mr. Martinez failed to call Ms. Gomez to provide any detail about P.M.'s statements to her, there is no record evidence establishing that P.M. detailed the "how, when, and where" of any sexual abuse allegations to Ms. Gomez. *See Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd).

On this record, the trial court could have reasonably found that P.M.'s statements to Ms. Gomez were nothing more than a "general allusion" to sexual abuse, whereas her statements to Mr. Molina provided the requisite detail. Accordingly, the trial court did not abuse its discretion by allowing Mr. Molina to testify as an outcry witness. *See Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd) (no abuse of discretion in allowing interviewer to testify where trial court could reasonably determine prior statements to others lacked the requisite detail); *see also Wright v. State*, No. 05-20-00417-CR, 2021 WL 2948553, at *4 (Tex. App.—Dallas June 28, 2021, no pet.) (mem. op., not designated for publication) (same).

Mr. Martinez next contends the trial court abused its discretion by allowing P.M. to testify to an extraneous offense committed against Y.M. because the testimony did not meet the requirements of article 38.37 and evidentiary rule 403. The code of criminal procedure provides that in a trial for a sexual offense against a child, evidence of extraneous acts of sexual abuse against children may be admitted

–5–

"for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. art. 38.37, § 2(b). Before such evidence may be introduced, however, the trial court must conduct a hearing outside the presence of the jury and determine that the evidence likely to be admitted at trial will adequately support a finding that the defendant committed the separate offense beyond a reasonable doubt. *Id* at § 2-a.

Mr. Martinez asserts that allowing P.M. to testify to the extraneous offense committed against her sister violated article 38.37 because P.M. was the only witness who testified to that offense. Mr. Martinez concedes that the one-witness rule permits the testimony of one witness to establish an extraneous offense if a jury could believe the testimony beyond a reasonable doubt, but Mr. Martinez appears to argue the rule does not apply when the sole witness testifying to the offense is not the victim of that offense. That argument lacks merit; the statute makes no distinction between victim testimony and other evidence establishing an extraneous offense. And there is no logical reason to conclude that a child victim's testimony alone is sufficient evidence to establish culpability beyond a reasonable doubt with respect to offenses against that victim, while testimony from another child who witnessed the abuse is not. *See, e.g.*, *Stinson v. State*, No. 05-07-01236-CR, 2009 WL 1267348, at \*5 (Tex. App.—Dallas May 8, 2009, no pet.) (mem. op., not designated for

publication) (victim testimony provided sole evidence of extraneous abuse against non-testifying sibling).

In the article 38.37 hearing, P.M. testified Mr. Martinez took off Y.M.'s diaper and kissed Y.M.'s external genitalia. She described how this took place in Ms. Tapia's and Mr. Martinez's shared bedroom, the same place Mr. Martinez abused her. This evidence was sufficient to support a finding that the extraneous offense occurred beyond a reasonable doubt, and the trial court did not abuse its discretion by concluding it satisfied article 38.37's requirements.

Mr. Martinez nevertheless argues that, even if the evidence satisfies article 38.37's requirements, it is inadmissible under evidentiary rule 403. Rule 403's balancing test limits "the admission of evidence under article 38.37." *Dies v. State*, 649 S.W.3d 273, 285–87 (Tex. App.—Dallas 2022, pet. ref'd) (applying the balancing factors identified in *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006)).[1] In reviewing a trial court's exercise of discretion to overrule an objection under rule 403, we will reverse only if the trial court's ruling lies outside the zone of reasonable disagreement. *See Hernandez v. State*, 390 S.W.3d 310, 323 (Tex. Crim. App. 2012).

---

1 The factors are: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

Addressing the relevant *Gigliobianco* factors, we begin with the evidence's inherent probative force. 210 S.W.3d at 642. Evidence of a separate sexual offense against a child "is probative of a defendant's character or propensity to commit sexual assaults on children." *Dies*, 649 S.W.3d at 285. Mr. Martinez made sexual contact with both Y.M. and P.M. in his bedroom while other adults were not present. Both children are girls, though they differ in age. The abuse P.M. described Mr. Martinez committing against Y.M. occurred in the same timeframe as his abuse against her. And the abuse against both revolved around their female sexual organ. The inherent probative force of the evidence weighs strongly in favor of its admission.

The State also needed the Y.M. evidence to provide the jury a complete picture of the abuse occurring in the home. And the State needed P.M. to testify to that abuse because Y.M. was an infant when it happened. *See Gigliobianco*, 210 S.W.3d at 642. Further, the State needed the evidence to counter defense counsel's opening statement, casting doubt as to whether Mr. Martinez abused Y.M. This factor also weighs in favor of admission.

Regarding the remainder of the *Gigliobianco* factors: the testimony took but one page of the more than 300-page trial transcript, *see Dies*, 649 S.W.3d at 287; the jury was given an appropriate limiting instruction which we presume they followed, *see Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003); and the abuse against Y.M. was no more serious than the abuse against P.M, *see Dies*, 649 S.W.3d

at 286. Though P.M. was the only witness describing her infant sister's abuse, this does not strongly weigh against admitting the evidence. And, while evidence of previous child sexual abuse is inherently inflammatory, *see Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013), on this record, the trial court did not abuse its discretion by overruling Mr. Martinez's rule 403 objection. *See Dies*, 649 S.W.3d at 287.

Mr. Martinez next contends the trial court erred by admitting photographs of Ms. Tapia's injuries from the alleged 2018 assault because the photographs were inadmissible under evidentiary rules 403 and 901. During opening statement, defense counsel suggested Ms. Tapia fabricated the assault and that she encouraged P.M. to fabricate sexual abuse allegations to obtain a U Visa, reserved for victims of certain crimes. *See* 8 U.S.C. §§ 1101(a)(15)(U), 1184(p). The State moved to admit photos of Ms. Tapia's alleged injuries from the assault during redirect examination. The photos showed bruising, scratching, Ms. Tapia's eyes, and a broken cell phone. Mr. Martinez objected, claiming there was "insufficient predicate" to admit the photos. The State responded that Ms. Tapia identified her body in the photos, and stated the photos accurately depicted her body around the time of the fight. Mr. Martinez persisted in his previous objection, telling the court "it takes more than that" to lay the proper predicate. The court overruled the objection and admitted the photos.

To preserve a complaint for appellate review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling. TEX. R. APP. P. 33.1 (a)(1)(A). Mr. Martinez did not make a rule 403 objection when the State moved to admit the photographs; accordingly, he failed to preserve any error on this issue. And while Mr. Martinez objected to "insufficient predicate at this time" and "[i]t takes a little more than that, Judge," when the State moved to admit the photographs at trial, this was insufficient to preserve error under rule 901 because he neither asserted the rule nor explained the basis of his objection. *See Bird v. State*, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985) (holding that an objection to lack of foundation with no specification of the type of foundation required was insufficient to preserve argument that testimony was inadmissible); *Castilleja v. State*, No. 05-20-00866-CR, 2022 WL 2448088, at *12 (Tex. App.— Dallas July 6, 2022, no pet.) (mem. op., not designated for publication) (holding that appellant did not preserve error because he failed to state rule 901 as the basis of his lack of foundation objection at trial). This issue presents nothing for our review.

Even had Mr. Martinez preserved error regarding the photographs, the court did not abuse its discretion by admitting them. Under the rule 403 analysis, one factor is the State's need for the evidence. *See Gigliobianco*, 210 S.W.3d at 641–42. The State needed the evidence to rebut Mr. Martinez's claim that Ms. Tapia fabricated the assault and P.M.'s sexual abuse allegations to get a U Visa. The color photos were not gruesome; they show bruising, scratching, Ms. Tapia's eyes, and a

broken cell phone. Thus, the probative value of the photographs was not outweighed by their prejudicial effect, and the trial court's decision was within the zone of reasonable disagreement. *See Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009); *Riley v. State*, No. 05-19-01402-CR, 2021 WL 4891773, at *4 (Tex. App.—Dallas Oct. 20, 2021, pet. ref'd) (mem. op., not designated for publication) (noting the State's need for evidence to rebut a defensive theory in determining whether trial court abused its discretion in admitting evidence over a rule 403 objection).

Finally, one way to authenticate evidence is testimony from a witness with knowledge that the item is what the proponent claims it to be. TEX. R. EVID. 901(b)(1). Ms. Tapia, a person with knowledge of the photos, testified to the content of the photos and affirmed they were an accurate depiction of her body around the time of the assault. Therefore, the State properly authenticated the photographs. *See DeLuna v. State*, 711 S.W.2d 44, 46 (Tex. Crim. App. 1986) (court concluded photograph was properly authenticated when the witness testified to its content, time, and accuracy).

Having overruled Mr. Martinez's issues, we affirm the trial court's judgment.

/Cory L. Carlyle//

CORY L. CARLYLE

JUSTICE

211032f.u05

Do Not Publish

TEX. R. APP. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EVER RICARDO MARTINEZ,
Appellant

No. 05-21-01032-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-84380-
2019.
Opinion delivered by Justice Carlyle.
Justices Goldstein and Kennedy
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 28th day of June, 2023.